BOWERS v. SPRINGFIELD FIRE & MARINE INS. CO.—108 . S. W. (2d), 798.

Eastern Section. July 3, 1937.

Petition for Certiorari denied by Supreme Court, October 3, 1937.

Sizer, Chambliss & Kefauver, of Chattanooga, for appellant.
T. W. Peace, of Madisonville, for appellee.

PORTRUM, J. This bill was filed to enforce payment of a policy of fire insurance according to its terms, the amount of coverage being $1,200, and to set aside a compromised settlement for the sum of one-half the face value of the policy, or $600, for the reason that the settlement was secured by misrepresentation and fraud on the part of the adjuster settling the claim. The chancellor granted the relief prayed and decreed a recovery for the full amount of the policy; from the decree, the defendant has appealed.

The chancellor found that the house was constructed in 1915 and cost in excess of $2,000, and the complainant has carried insurance upon the property from $1,200 to $1,500. This court concurs in the finding that the house in fact was worth in excess of the insurance and that this issue is not raised by an assignment of error. We quote in part the material findings of fact by the chancellor:

"The court is inclined of the opinion from all the proof in the cause that plaintiff signed the proof of loss and compromised agreement, but that he did so under misapprehension of his rights at the representation of the defendant's adjuster that he could receive no greater sum than that actually paid for the property.

"The court's view of this case and what seems to the court the most reasonable construction of all the proof is that the adjuster represented to the complainant that $600 being the amount paid

to him for the property was the greatest that he could ascertain (recover) under the policy, besides there was a veiled threat conveyed to the complainant that he might be guilty of a crime or an attempt to prove him guilty by statements made by the adjuster to the effect that conditions or circumstances looked very bad for him, clearly indicating that it was his belief that the complainant was responsible for the loss of the building, which position is not borne out by the proof, nor is there anything that would indicate to the mind of the court that the plaintiff was responsible for the destruction of the property from all of the proof in the cause.

"The court is of the opinion that all this contributed to complainant's acquiescence in the suggestion made by the adjuster and when viewed in the light of conditions, surrounding circumstances, state of mind of the parties, and their relations, the court is of the opinion that it is the most reasonable and natural application to make of the proof in the cause.

"The court is of the opinion that complainant having signed said proof of loss and the agreement would be bound thereby but for the misrepresentations and inferences made by the adjuster which evidently produced effect upon the mind and action of the complainant.

"The court is of the opinion that complainant is not bound by the actual amount paid for the property in recovering for loss under the policy. . . ."

These findings are attacked under three assignments of error as follows:

"1. The Chancellor erred in holding and adjudging that the compromised agreement in question is not binding on complainant because he signed it under a misapprehension of his legal right induced by the misrepresentation and the inferences made by the defendant's adjuster, which representations were accompanied by a veiled threat, etc.

"2. The Chancellor erred in holding and adjudging that the adjuster's clearly indicated belief that complainant was responsible for the fire which destroyed the building was 'not borne out by the proof.'

"3. The Chancellor erred in holding that the settlement agreement evidenced by the proof of loss sworn to by the complainant was not binding on complainant, and in setting said agreement aside."

The complainant's property was worth far in excess of the amount of insurance; after the loss he signed and swore to a proof of loss which contained the following declarations:

"(6). The cash value of said property at the time of the fire was $600.

"(7). The whole loss and damage as stated under Schedule B was $600.

"(8). The amount claimed in compromise under the above numbered policy is $600."

This adjustment was forwarded to the company and it issued its check and forwarded it to the insured who, in the meantime, had acquainted himself as to his rights and become aware of the falseness of the representation of the adjuster, and he declined to accept the check in full satisfaction, but repudiated the settlement. A few days thereafter he had his wife or sister-in-law to write a letter which he signed, declining to accept the settlement.

He testifies that the adjuster made inquiry of him as to what he paid for the property and was told that he paid the sum of $600, $100 cash and the balance in monthly installments, the greater portion of which was not due and unpaid. The adjuster made further inquiry as to the circumstances of the fire, and the financial and marital relationship of the insured. He learned that the insured bought the property in anticipation of marriage, and soon after buying it he married and lived in the property with his wife, but she in a few weeks left him and later returned to him, and again left him, going to the home of her father, where she was at the date of the fire. The insured remained in his house but slept in the home of his father nearby. The house burned about 11 o'clock at night, while the insured was asleep in the home of his parents.

The adjuster told him that the company was not liable for more than what he paid for the house and that he could not conscientiously recommend that it pay more; but the circumstances surrounding the fire were very suspicious and it looked bad for the insured. The insured first held out for the payment of $1,200, but induced by the representation of the adjuster agreed to a settlement of $600, the amount he paid in purchase of the property. The adjuster then took him to Madisonville and before a justice of the peace where the adjuster filled out the claim of loss and the insured signed it, swearing to it before the justice of the peace. The adjuster was a man of experience in settling losses, and the insured was a man of limited education, who could sign his name, but the women in the family wrote his correspondence. His testimony and the testimony of the adjuster is in conflict, and it is insisted here that the complainant below did not carry the burden of proof. This was a question that presented itself to the chancellor who decided in favor of the complainant; in this court there is a presumption of law in favor of the view of the proof taken by the chancellor, and this presumption carries the burden here in favor of the complainant. See the statute requiring chancellors to find the facts. But the complainant was corroborated in the points at issue between him and the adjuster by other disinterested witnesses, and, in trying the issue as an independent proposition, this court is inclined to the view that the weight of the evidence supports the version of the complainant. For instance, the adjuster states that the insured told him that there had been no fire in the building on the day preceding the fire; the

insured states that there had been a fire late in the evening when he had cooked some eggs for his evening meal, and that he told the adjuster of this fire. A disinterested neighbor who saw the insured running barefooted to the burning building asked him at the time had there been any fire in the building during the day, and he said there had been, that he had cooked some eggs for his supper. Why he would tell this witness this at the time of the fire when he had had no time to deliberate and then later tell this adjuster that there had been no fire cannot be reasonably explained. The insured is corroborated upon other points of difference between him and the adjuster.

The court concurs in holding that the adjuster represented to the insured that the insurance company's liability was confined to the purchase price of the property; that this representation was false and the adjuster knew it was false, while the insured did not know it was false, and it was such a representation that a man of the insured's intelligence would be induced to act upon it. We think this false inducement was sufficient to avoid the settlement and that the threat of arson held over the insured should be disregarded. But we think this implied threat was likewise used as an inducement, and was acted upon by the insured. The adjuster admitted that he had come to the conclusion that the fire was an inside job, and that the building was locked and the keys in the possession of the insured, and it was a case of arson. It is argued that if the adjuster believed the property had been fired by the insured, he had a right to call this to the insured's attention to induce a settlement. And it is further argued that the circumstances too indicate an arson. The chancellor found as a fact that the proof explains these circumstances and establishes the fact that the insured did not burn the building. The complainant's testimony does negative the fact that the insured burned the building and there was no countervailing testimony introduced.

A man of superior intelligence can badly frighten another of inferior intelligence by recounting circumstances to indicate to the ordinary man, as explained, that a crime has been committed and his interest would indicate that he was the guilty party. The law does not justify the use of a well-founded belief for such a purpose; the law affords a different remedy for arson. And if the insured is an innocent man and frightened, then he labors under the influence of coercion in settling his claim. This settlement does not represent the free will and act of the insured free from the fraudulent inducement of the agent of the company. For this reason it was rightfully set aside. Pearson v. Mutual Life Insurance Co., 17 Tenn. App., 503, 68 S. W. (2d), 963.

There is another reason why the court thinks the settlement was not binding. The offer was made to accept $600 in full as the

value of the property destroyed; if property has been overinsured, the statute requires the return of the excess premium charged (Code, section 6173), so, when this offer of compromise was received by the company, it was not accepted as made, for an additional consideration was added. The check carries this notation, "That said policy or certificate is hereby cancelled and surrendered without returned premiums." The insured never agreed to this condition and addition to his original offer, and, therefore, there was never a meeting of the mind by an acceptance of the offer as made by the insured.

The remaining and fourth assignment of error reads:

"The Chancellor erred in failing and refusing to hold and adjudge and except for the compromised agreement the plaintiff could not recover on the policy because of the breach of conditions set up in the amended answer."

 This policy and several other exhibits were before the lower court and ordered sent up in their original form. They are not a part of the transcript nor attached to the transcript as required by the rules of this court. This court has heretofore declined to construe the provisions of a policy that was not before it.

There has grown up a custom to save cost in a transcript of sending up separate papers in their original form, and this is done by putting them in an envelope and sticking it loosely between the pages of a transcript. These exhibits invariably get lost and the members of the court are put to much trouble in searching for them and long delays in securing them, to the detriment of the court's work in preparing the opinions. To investigate the record at piecemeal while searching for missing exhibits confuses the judge and takes his mind from the issues at hand and renders his work unsatisfactory, both to himself and the bar. To eliminate this hardship, the court on May 19, 1935, passed a rule reading as follows:

"When original documentary exhibits are, by order of the trial court, sent up as a part of the record on appeal, and are each duly filed below and properly authenticated by the trial judge, they shall, if possible, be permanently attached to the transcript, or securely enclosed in an envelope or a similar container attached to the transcript. . . ."

There is then provision made for exhibits that are not attachable, but an insurance policy is not of this character. The court has found it difficult to enforce this rule, which has been generally ignored by the clerks of the lower courts and counsel and it is continually vexed by the loss of loose exhibits. The members of the court seem to be the only ones who attempt to comply with the rule by attaching exhibits which are not lost to the transcript after the opinions are dictated.

Must the court make a search for these exhibits, or wait until they are supplied before deciding the case? Should the court be required

to see that the transcript is in order according to its rules? The court is of the opinion that it is the duty of counsel to pass to the court a perfect record made up under the rules of the court, and that it is not the duty of the court to see that the transcript is perfected under the rules of the court. The only way the court can enforce its rules and require the transcript to be perfected under the rules is to decline to decide the issues raised upon the missing papers. Rules of the Court of Appeals, 17 Tenn. App., p. ii.

The decree of the chancellor is affirmed, and a judgment or decree will be entered here for the sum of $690.80, the judgment below, with interest from February 13, 1937, the date of the decree below, against the appellant and the sureties on its appeal bond, together with the costs of the cause.

Ailor and McAmis, JJ., concur.